**Opinion filed September 29, 2011**



## In The

# Eleventh Court of Appeals

_____

### Nos. 11-10-00027-CR & 11-10-00028-CR
_____

### JAMES ALLEN SULLIVAN, Appellant

### V.

### STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause Nos. 19690 & 18971**

### M E M O R A N D U M   O P I N I O N

The jury convicted James Allen Sullivan of the offenses of sexual assault and sexual assault of a child: one count of sexual assault against A.S. and one count of sexual assault of a child against C.C. in trial court cause no. 19690 (our Cause No. 11-10-00027-CR) and two counts of sexual assault of a child against N.P. in trial court cause no. 18971 (our Cause No. 11-10-00028-CR). The jury assessed punishment for each count at confinement for eighteen years. The trial court ordered that the sentences in cause no. 18971 are to run concurrently and that each

sentence in cause no. 19690 is to run consecutively to each other and to the sentences imposed in cause no. 18971. We modify and affirm.

Appellant presents two issues on appeal. In his first issue, appellant contends that the evidence is factually insufficient to support his convictions. In the second issue, appellant asserts that the trial court improperly cumulated his sentences because one of the complainants was not under the age of seventeen.

*Sufficiency of the Evidence*

We note at the outset of our analysis of appellant's first issue that the Texas Court of Criminal Appeals has now held in *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010), that there is "no meaningful distinction between the *Jackson v. Virginia*[1] legal-sufficiency standard and the *Clewis*[2] factual-sufficiency standard"; that the *Jackson v. Virginia* standard is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt"; and that "[a]ll other cases to the contrary, including *Clewis*, are overruled." *Brooks*, 323 S.W.3d at 895, 902, 912 (footnotes added). Accordingly, a challenge to the factual sufficiency of the evidence is no longer viable. We also note that appellant did not have the benefit of the opinion in *Brooks* when he filed his briefs. We will review appellant's factual sufficiency challenge under the legal sufficiency standard set forth in *Jackson v. Virginia*. Under this standard, we must review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307; *Brooks*, 323 S.W.3d at 899.

In his brief, appellant concedes that the evidence is legally sufficient, under the *Jackson v. Virginia* standard, to support the jury's verdicts as to the offenses committed against N.P. We agree.

N.P. testified that appellant penetrated her vagina with his fingers and engaged in sexual intercourse with her while she was confined in the Ron Jackson facility of the Texas Youth Commission and living in the Freedom Dorm, where appellant was employed as a juvenile correctional officer, JCO-5, with JCO-6 being the highest ranking officer at the dorm. Appellant

---

[1] *Jackson v. Virginia*, 443 U.S. 307 (1979).

[2] *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996).

was the acting dorm supervisor when the JCO-6, Wanda Drew, was out of the office. During the time period in question, Drew was out quite often due to illness.

Appellant was also convicted of sexually assaulting A.S. by penetrating her sexual organ with his finger without her consent. The record shows that A.S. was sent to TYC as a juvenile and to the Freedom Dorm of the Ron Jackson facility in the fall of 2003. In the spring of 2004, when A.S. was seventeen years old, appellant began showing special attention to her and making inappropriate sexual comments. On one occasion, appellant requested that A.S. be the first to shower during shower routine and then directed A.S. to go to the supply closet. While A.S. was working in the closet, appellant told her to scoot the stool to the left of the doorway, get on the stool, and drop her shorts. She complied. Appellant stood at the doorway of the closet and then inserted his finger into A.S.'s vagina. Appellant positioned himself such that he was facing the dayroom and could see someone coming into the dayroom. The encounter lasted no more than a minute because appellant noticed that someone had walked into the dayroom.

Because A.S. was not a child for purposes of the sexual assault statutes, consent was an issue. The trial court instructed the jury with respect to the count involving A.S that consent means "assent in fact, whether express or apparent," and that coercion means either (1) "a threat however communicated to expose a person to hatred, contempt, or ridicule" or (2) "to take or withhold action as a public servant, or to cause a public servant to take or withhold action." A.S. testified that she consented to appellant putting his finger into her vagina because she was scared and did not believe she could prevent him doing it because he was a staff member. A.S. testified that appellant told her not to tell, indicating that she would get more time and that he would get in trouble.

Appellant was also convicted of sexually assaulting C.C., a child, by penetrating her sexual organ with his finger. C.C. testified that she had been committed to TYC in 2002 and that, from 2003 to 2004, she lived in the Freedom Dorm where appellant worked. She testified that appellant took a special interest in her and gave her extra privileges. Appellant also gave her Xanax pills a few times, which he said had been prescribed for him. C.C. testified that she was in the supply closet folding clothes the first time appellant digitally penetrated her. C.C. said that appellant told her to pull down her pants and face the shelf. She complied. Appellant stood halfway in the hall so that part of him could still be seen by the surveillance camera, reached his hand around into the closet where there was no surveillance camera, and put his fingers into

C.C.'s vagina. Appellant called C.C. to the closet on another occasion and digitally penetrated her again. Appellant asked her if she had ever dated older men and discussed taking their relationship to the next level. One time, appellant directed C.C. to go in the closet, stand toward the back of the closet, and rub lotion on her vagina. Again, she complied. She had her pants down and was leaning over the cabinets when appellant came in and started to insert his penis into her vagina. However, appellant got nervous and quit when he heard an announcement on his radio that someone was being brought back from the infirmary.

At trial, appellant denied having any inappropriate sexual contact with the juvenile offenders at TYC. Appellant specifically denied having any inappropriate sexual contact with N.P., A.S., and C.C. Appellant testified that he did not insert his finger or his penis into N.P.'s vagina. Appellant also denied furnishing Xanax pills to the girls, but he admitted that he had had a prescription for Xanax. Appellant also admitted that he had had a vasectomy, corroborating N.P.'s testimony that appellant told her she could not get pregnant because he had had "some type of surgery." Appellant called three witnesses who worked with appellant at TYC, including his supervisor, to testify on his behalf. These witnesses were of the opinion that appellant was truthful but that the particular girls who testified against appellant were not truthful.

We hold that the evidence is sufficient to support the jury's verdict as to each conviction. Our review of the record reflects that N.P., A.S., and C.C. gave similar testimony regarding how appellant treated them and where and how the assaults occurred. As to each conviction, a rational trier of fact could have found the essential elements of the particular crime to be true beyond a reasonable doubt. The jury, as the trier of fact, was the judge of the credibility of the witnesses and the weight to be given their testimony. Appellant's first issue is overruled.

*Consecutive Sentences*

In his second issue, appellant argues that the stacking of his sentences was improper. The State concedes that, because A.S. was not younger than seventeen years of age, the sentence in the count involving A.S. cannot run consecutively to the other sentences. *See* TEX. PENAL CODE ANN. § 3.03 (Vernon 2011). Pursuant to Section 3.03(a), when an accused is tried in a single criminal action and is found guilty of more than one offense arising out of the same criminal episode, the sentences – with a few exceptions – shall run concurrently. One of the exceptions, however, provides that the sentences may run concurrently or consecutively if each sentence is for a conviction of a specific type of offense, including sexual assault, that was "committed

against a victim younger than 17 years of age at the time of the commission of the offense regardless of whether the accused is convicted of violations of the same section more than once or is convicted of violations of more than one section." *Id.* § 3.03(b)(2)(A). The trial court improperly stacked the sentence from the sexual assault conviction involving A.S. because she was already seventeen at the time of the offense and, thus, was not "younger than" seventeen.

The Texas Court of Criminal Appeals has held that a trial court's unlawful cumulation order is not reversible error and that the appropriate remedy on appeal is for the appellate court to reform the judgment by deleting the improper cumulation order. *Beedy v. State*, 250 S.W.3d 107, 110, 115 (Tex. Crim. App. 2008). The judgment in cause no. 19690 reflects that the trial court made the following special finding:

> **The sentence imposed in Cause #CR19690 as to Count I shall begin when the judgment in the sentence imposed in Cause #CR18971 has ceased to operate. The sentence imposed in Cause #CR19690 as to Count II shall begin when the judgment in the sentence imposed in Cause #CR19690 Count I has ceased to operate.**

The judgment in cause no. 18971 reflects that the trial court made the following special finding:

> **Cause #CR18971 Count I and VI are to run concurrent. The sentence imposed in Cause #CR19690 as to Count I shall begin when the judgment in the sentence imposed in Cause #CR18971 has ceased to operate. The sentence imposed in Cause #CR19690 as to Count II shall begin when the judgment in the sentence imposed in Cause #CR19690 Count I has ceased to operate.**

Consequently, the trial court's judgments in both causes must be modified to delete the language ordering cumulation of the sentence involving A.S.: Count I of cause no. 19690. Appellant's second issue is sustained.

### This Court's Ruling

The special finding in the judgment of the trial court in cause no. 19690 is modified to read as follows:

> **The sentences imposed in Cause #CR19690 Count I and Count II shall run concurrently with one another and shall begin to operate when the sentence imposed in Cause #CR18971, from the 35th District Court of Brown County, Texas, shall cease to operate.**

The special finding in the trial court's judgment in cause no. 18971 is modified to delete all of the language following the first sentence, which shall read as follows: **The sentences imposed**

**in Cause #CR18971 Count I and VI are to run concurrently.** As modified, the judgments of the trial court are affirmed.


JIM R. WRIGHT

CHIEF JUSTICE


September 29, 2011

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.